FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 12 2010

Stephan Harris, Clerk
Cheyenne

Andrew C. Emrich, P.C.
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P. O. Box 1347
Cheyenne, WY 82003
(307) 778-4219
(307) 778-8175 Fax

Hadassah M. Reimer
HOLLAND & HART LLP
25 S. Willow, Suite 200
P. O. Box 68
Jackson, WY 83001
(307) 739-9741
(307) 739-9744

ATTORNEYS FOR PETITIONER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| STANLEY ENERGY, INC.<br><br>Petitioner,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>Respondent. | ) | Case No. 10CV0047D |

## PETITION FOR REVIEW OF FINAL AGENCY ACTION

Stanley Energy, Inc. (Stanley), through its attorneys, HOLLAND & HART LLP, hereby petitions this Court for review of a decision by the Director of the Wyoming State Office of the Bureau of Land Management (BLM) rejecting Stanley's high bids

Receipt #
Summons issued
not issued

for seven lease parcels located in the Bridger-Teton National Park (BLM State Director's Decision). A copy of the BLM State Director's Decision is attached as Exhibit A.

1. In 2005, the U.S. Forest Service recommended that BLM offer 44,720 acres on the eastern edge of the Bridger-Teton National Forest for competitive oil and gas leasing. BLM accepted the Forest Service's recommendation and offered this acreage for competitive leasing at four separate quarterly lease sales: December 6, 2005; April 4, 2006; June 6, 2006; and August 1, 2006.

2. The seven lease parcels at issue in this petition were offered, sold and paid for at a public auction by the Wyoming State BLM office as part of the June 2006 lease sale. These parcels have the following lease serial numbers: WYW173037, WYW173038, WYW173039, WYW173040, WYW173041, WYW173045, and WYW173046, and bear the following respective parcel numbers: 114, 115, 116, 117, 118, 122, and 123 (Subject Parcels). Stanley purchased and paid for each of these parcels. Stanley has paid, and BLM has accepted, a total of $822,889.46 for the bonus bids, first year rentals and administrative fees for the Subject Parcels in accordance with BLM's competitive oil and gas leasing regulations.

3. The Wyoming State BLM Director rejected Stanley's high bids for the Subject Parcels by letter dated August 21, 2009. Stanley filed a timely notice of appeal and Petition for Stay and Statement of Reasons with the Interior Board of Land Appeals

(IBLA) on September 24, 2009. The IBLA denied Stanley's Petition for Stay by an Order dated December 29, 2009 (IBLA Order). The IBLA Order is attached as Exhibit B.

4. The IBLA Order denying Stanley's Petition for a Stay rendered the underlying BLM State Director's Decision "effective immediately" 43 C.F.R. § 4.21(a)(3). The BLM State Director's Decision now constitutes final agency action subject to appellate review by the District Court. 43 C.F.R. § 4.21 (c); 5 U.S.C. § 704.

5. BLM acted arbitrarily and capriciously and in excess of statutory jurisdiction in violation of the Administrative Procedure Act, the Mineral Leasing Act, .and BLM's implementing regulations, by wrongfully rejecting Stanley's binding high bids for the Subject Parcels by mistakenly relying upon legislation that was enacted three years after the lease sale, by incorrectly applying two unrelated interlocutory IBLA orders, by violating its legal obligations under the agency's competitive oil and gas leasing program, and by failing to provide a reasoned basis for its decision. 5 U.S.C. § 706(2); 30 U.S.C. § 226 *et seq.;* 43 C.F.R. subpart 3120; *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574-1576 (10th Cir. 1994).

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (Federal Question), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), FED. R. APP. P. 15, and U.S.D.C.L.R. 83.7.2.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), in that the Respondent is a department of the United States government, the actions complained of relate to public lands located in the District of Wyoming, and a substantial part of the events or omissions giving rise to the claim occurred in the District of Wyoming, including the underlying decision by the Wyoming State BLM Director to reject Stanley's binding high bids for the Subject Parcels.

WHEREFORE, Stanley respectfully requests that this Court:

1. Declare that Respondent BLM acted in contravention of the Administrative Procedure Act and the Mineral Leasing Act in rejecting Stanley's binding high bids for the Subject Parcels;

2. Set aside and vacate Respondent BLM's August 21, 2009 decision rejecting Stanley's binding high bids for the Subject Parcels;

3. Remand the matter to BLM with instructions to reinstate Stanley's binding high bids for the Subject Parcels;

4. Award Stanley all its costs and attorneys fees; and

5. Grant Stanley such other relief as the Court deems just and reasonable.

Respectfully submitted this 12th day of March 2010.

Andrew C. Emrich, P.C.
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, Wyoming 82003-1347
(307) 778-4219
(307) 778-8175 Fax
acemrich@hollandhart.com

Hadassah M. Reimer
HOLLAND & HART LLP
25 S. Willow, Suite 200
P. O. Box 68
Jackson, WY 83001
(307) 739-9741
(307) 739-9744 Fax
hmreimer@hollandhart.com

**ATTORNEYS FOR PETITIONER
STANLEY ENERGY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2010, a true and correct copy of the foregoing **Petition for Review of Final Agency Action** was filed and served by certified mail upon the following:

Hon. Eric Holder
Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Hon. Ken Salazar
Secretary of the Interior
United States Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Hon. Christopher A. Crofts
United States Attorney
2120 Capitol Avenue, Suite 4000
P.O. Box 668
Cheyenne, WY 82003-0668

United States Department of the Interior
Board of Land Appeals
Office of Hearings and Appeals
801 North Quincy Street, Suite 300
Arlington, VA 22203

Mr. Jack K. Haugrud, Esq.
Chief, Natural Resources Section
Environmental & Natural Resources Division
United States Department of Justice
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663

Mr. Philip Lowe, Esq.
Office of the Solicitor
Rocky Mountain Region
United States Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215

______________________________

4750049_2.DOC

# Exhibit A



United States Department of the Interior




BUREAU OF LAND MANAGEMENT
Wyoming State Office
P.O. Box 1828
Cheyenne, Wyoming 82003-1828

In Reply Refer To:
3100 (921Madrid)

AUG 2 1 2009

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Stanley Energy, Inc.
1776 Lincoln Street, Suite 1300
Denver, CO 80203-1017

**DECISION**

**OIL AND GAS LEASE SALE BID REJECTED**

According to our records, you are the high bidder of lease serial numbers WYW173037, WYW173038, WYW173039, WYW173040, WYW173041, WYW173045, and WYW173046 parcel numbers 114, 115, 116, 117, 118, 122, and 123 offered for sale at the Bureau of Land Management (BLM) Wyoming's June 6, 2006 oil and gas competitive lease sale.

The Wyoming Outdoor Council and other groups (collectively "Appellants") protested BLM's offering of your lease parcel. The BLM has not responded to the protest or issued you a lease, as a result of two separate orders issued by the Interior Board of Land Appeals (IBLA), dated July 10, 2006 and September 21, 2006. In the orders, the IBLA determined that Appellants had demonstrated a likelihood of succeeding on the merits of their challenges to the adequacy of the National Environmental Policy Act (NEPA) leasing decision documents prepared by the Forest Service in the early 1990s and relied upon by the BLM to offer for sale certain oil and gas lease parcels located within the Bridger Teton National Forest. The decision to offer your parcel for lease relied upon that same NEPA documentation and is therefore affected by the defects identified in the IBLA orders.

In addition, on March 30, 2009, the President signed into law the Omnibus Public Lands Management Act (Public Law 111-11, 123 Stat. 1128). This legislation provides that certain oil and gas leasing actions within the Wyoming Range Withdrawal Area are inappropriate and no longer allowed. It is clear the President and Congress have determined that there are higher and better uses of this land than oil and gas exploration and development. The lease parcel that you bid on is located within the Wyoming Range Withdrawal Area.

The Secretary of the Interior is vested by the Mineral Leasing Act of 1920, as amended, with broad discretionary authority to lease or not lease Federal land which is otherwise available for leasing. The Secretary (through BLM) may exercise that broad authority to reject a bid and

EXHIBIT
A

decline the offer to lease for any reason, prior to lease execution. Exercising that authority, and in consideration of the facts discussed above, we have determined to reject your bid on lease parcel numbers 114, 115,116, 117, 118, 122, and 123 and will refund your filing fee, your first year rental payment, and your bonus bid.

In accordance with 43 CFR § 3101.7-3, this Decision may be appealed to the Interior Board of Land Appeals, Office of Hearings and Appeals, in accordance with the regulations contained in 43 CFR, Part 4 and Form 1842-1 (copy attached). If an appeal is taken, your notice of appeal must be filed in this office within 30 days from your receipt of this Decision. The appellant has the burden of showing that the Decision appealed from is in error.

In accordance with 43 CFR § 3101.7-3, this Decision may be appealed to the Interior Board of Land Appeals, Office of Hearings and Appeals, in accordance with the regulations contained in 43 CFR, Part 4 and Form 1842-1 (copy attached). If an appeal is taken, your notice of appeal must be filed in this office within 30 days from your receipt of this Decision. The appellant has the burden of showing that the Decision appealed from is in error.

**Standards for Obtaining a Stay**

Except as otherwise provided by law or other pertinent regulations, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards:

(1) The relative harm to parties if the stay is granted or denied;

(2) The likelihood of the protesters' success on the merits;

(3) The likelihood of the immediate and irreparable harm if the stay is not granted; and

(4) Whether the public interest favors granting the stay.

Donald A. Simpson
State Director

Attachment

Form 1842-1
(September 2006)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

# INFORMATION ON TAKING APPEALS TO THE INTERIOR BOARD OF LAND APPEALS

DO NOT APPEAL UNLESS
1. This decision is adverse to you,
AND
2. You believe it is incorrect

## IF YOU APPEAL, THE FOLLOWING PROCEDURES MUST BE FOLLOWED

**1. NOTICE OF APPEAL..............** A person who wishes to appeal to the Interior Board of Land Appeals must file in the office of the officer who made the decision (not the Interior Board of Land Appeals) a notice that he wishes to appeal. A person served with the decision being appealed must transmit the *Notice of Appeal* in time for it to be filed in the office where it is required to be filed within 30 days after the date of service. If a decision is published in the FEDERAL REGISTER, a person not served with the decision must transmit a *Notice of Appeal* in time for it to be filed within 30 days after the date of publication (43 CFR 4.411 and 4.413).

**2. WHERE TO FILE**

NOTICE OF APPEAL.............. Bureau of Land Management
5353 Yellowstone Road, Cheyenne, WY 82009 or P. O. Box 1828, Cheyenne, WY 82003

WITH COPY TO SOLICITOR... U.S. Department of the Interior, Office of the Solicitor, Rocky Mountain Region, 755 Parfet St., #151, Lakewood, CO 80215

**3. STATEMENT OF REASONS** Within 30 days after filing the *Notice of Appeal*, file a complete statement of the reasons why you are appealing. This must be filed with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203. If you fully stated your reasons for appealing when filing the *Notice of Appeal*, no additional statement is necessary (43 CFR 4.412 and 4.413).

WITH COPY TO SOLICITOR.................. U.S. Department of the Interior, Office of the Solicitor, Rocky Mountain Region, 755 Parfet St., #151, Lakewood, CO 80215

**4. ADVERSE PARTIES..............** Within 15 days after each document is filed, each adverse party named in the decision and the Regional Solicitor or Field Solicitor having jurisdiction over the State in which the appeal arose must be served with a copy of: (a) the *Notice of Appeal*, (b) the Statement of Reasons, and (c) any other documents filed (43 CFR 4.413).

**5. PROOF OF SERVICE..............** Within 15 days after any document is served on an adverse party, file proof of that service with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203. This may consist of a certified or registered mail "Return Receipt Card" signed by the adverse party (43 CFR 4.401(c)).

**6. REQUEST FOR STAY..........** Except where program-specific regulations place this decision in full force and effect or provide for an automatic stay, the decision becomes effective upon the expiration of the time allowed for filing an appeal unless a petition for a stay is timely filed together with a *Notice of Appeal* (43 CFR 4.21). If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Interior Board of Land Appeals, the petition for a stay must accompany your *Notice of Appeal* (43 CFR 4.21 or 43 CFR 2801.10 or 43 CFR 2881.10). A petition for a stay is required to show sufficient justification based on the standards listed below. Copies of the *Notice of Appeal* and Petition for a Stay must also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (43 CFR 4.413) at the same time the original documents are filed with this office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.

Standards for Obtaining a Stay. Except as otherwise provided by law or other pertinent regulations, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards: (1) the relative harm to the parties if the stay is granted or denied, (2) the likelihood of the appellant's success on the merits, (3) the likelihood of immediate and irreparable harm if the stay is not granted, and (4) whether the public interest favors granting the stay.

Unless these procedures are followed, your appeal will be subject to dismissal (43 CFR 4.402). Be certain that all communications are identified by serial number of the case being appealed.

NOTE: A document is not filed until it is actually received in the proper office (43 CFR 4.401(a)). See 43 CFR Part 4, Subpart B for general rules relating to procedures and practice involving appeals.

(Continued on page 2)

AUG. 24. 2009 1:59PM BLM MINERALS & LANDS NO. 4025 P. 4

43 CFR SUBPART 1821—GENERAL INFORMATION

Sec. 1821.10 Where are BLM offices located? (a) In addition to the Headquarters Office in Washington, D.C. and seven national level support and service centers, BLM operates 12 State Offices each having several subsidiary offices called Field Offices. The addresses of the State Offices can be found in the most recent edition of 43 CFR 1821.10. The State Office geographical areas of jurisdiction are as follows:

STATE OFFICES AND AREAS OF JURISDICTION:

Alaska State Office ------- Alaska
Arizona State Office ------- Arizona
California State Office ------ California
Colorado State Office ------ Colorado
Eastern States Office ------- Arkansas, Iowa, Louisiana, Minnesota, Missouri and, all States east of the Mississippi River
Idaho State Office ---------- Idaho
Montana State Office ------- Montana, North Dakota and South Dakota
Nevada State Office -------- Nevada
New Mexico State Office ---- New Mexico, Kansas, Oklahoma and Texas
Oregon State Office -------- Oregon and Washington
Utah State Office ---------- Utah
Wyoming State Office ------- Wyoming and Nebraska

(b) A list of the names, addresses, and geographical areas of jurisdiction of all Field Offices of the Bureau of Land Management can be obtained at the above addresses or any office of the Bureau of Land Management, including the Washington Office, Bureau of Land Management, 1849 C Street, NW, Washington, DC 20240.

(Form 1842-1, September 2006)

AUG. 24. 2009 1:59PM BLM MINERALS & LANDS NO. 4025 P. 5

(III) the results of those actions.

## Subtitle C—Wyoming Range

**SEC. 3201. DEFINITIONS.**

In this subtitle:

(1) SECRETARY.—The term "Secretary" means the Secretary of the Interior.

(2) WYOMING RANGE WITHDRAWAL AREA.—The term "Wyoming Range Withdrawal Area" means all National Forest System land and federally owned minerals located within the boundaries of the Bridger-Teton National Forest identified on the map entitled "Wyoming Range Withdrawal Area" and dated October 17, 2007, on file with the Office of the Chief of the Forest Service and the Office of the Supervisor of the Bridger-Teton National Forest.

**SEC. 3202. WITHDRAWAL OF CERTAIN LAND IN THE WYOMING RANGE.**

(a) WITHDRAWAL.—Except as provided in subsection (f), subject to valid existing rights as of the date of enactment of this Act and the provisions of this subtitle, land in the Wyoming Range Withdrawal Area is withdrawn from—

(1) all forms of appropriation or disposal under the public land laws;

(2) location, entry, and patent under the mining laws; and

(3) disposition under laws relating to mineral and geothermal leasing.

(b) EXISTING RIGHTS.—If any right referred to in subsection (a) is relinquished or otherwise acquired by the United States (including through donation under section 3203) after the date of enactment of this Act, the land subject to that right shall be withdrawn in accordance with this section.

(c) BUFFERS.—Nothing in this section requires—

(1) the creation of a protective perimeter or buffer area outside the boundaries of the Wyoming Range Withdrawal Area; or

(2) any prohibition on activities outside of the boundaries of the Wyoming Range Withdrawal Area that can be seen or heard from within the boundaries of the Wyoming Range Withdrawal Area.

Applicability.

(d) LAND AND RESOURCE MANAGEMENT PLAN.—

(1) IN GENERAL.—Subject to paragraph (2), the Bridger-Teton National Land and Resource Management Plan (including any revisions to the Plan) shall apply to any land within the Wyoming Range Withdrawal Area.

(2) CONFLICTS.—If there is a conflict between this subtitle and the Bridger-Teton National Land and Resource Management Plan, this subtitle shall apply.

(e) PRIOR LEASE SALES.—Nothing in this section prohibits the Secretary from taking any action necessary to issue, deny, remove the suspension of, or cancel a lease, or any sold lease parcel that has not been issued, pursuant to any lease sale conducted prior to the date of enactment of this Act, including the completion of any requirements under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

(f) EXCEPTION.—Notwithstanding the withdrawal in subsection (a), the Secretary may lease oil and gas resources in the Wyoming Range Withdrawal Area that are within 1 mile of the boundary of the Wyoming Range Withdrawal Area in accordance with the Mineral Leasing Act (30 U.S.C. 181 et seq.) and subject to the following conditions:

(1) The lease may only be accessed by directional drilling from a lease held by production on the date of enactment of this Act on National Forest System land that is adjacent to, and outside of, the Wyoming Range Withdrawal Area.

(2) The lease shall prohibit, without exception or waiver, surface occupancy and surface disturbance for any activities, including activities related to exploration, development, or production.

(3) The directional drilling may extend no further than 1 mile inside the boundary of the Wyoming Range Withdrawal Area.

**SEC. 3203. ACCEPTANCE OF THE DONATION OF VALID EXISTING MINING OR LEASING RIGHTS IN THE WYOMING RANGE.**

Deadline.

(a) NOTIFICATION OF LEASEHOLDERS.—Not later than 120 days after the date of enactment of this Act, the Secretary shall provide notice to holders of valid existing mining or leasing rights within the Wyoming Range Withdrawal Area of the potential opportunity for repurchase of those rights and retirement under this section.

(b) REQUEST FOR LEASE RETIREMENT.—

(1) IN GENERAL.—A holder of a valid existing mining or leasing right within the Wyoming Range Withdrawal Area may submit a written notice to the Secretary of the interest of the holder in the retirement and repurchase of that right.

(2) LIST OF INTERESTED HOLDERS.—The Secretary shall prepare a list of interested holders and make the list available to any non-Federal entity or person interested in acquiring that right for retirement by the Secretary.

(c) PROHIBITION.—The Secretary may not use any Federal funds to purchase any right referred to in subsection (a).

(d) DONATION AUTHORITY.—The Secretary shall—

(1) accept the donation of any valid existing mining or leasing right in the Wyoming Range Withdrawal Area from the holder of that right or from any non-Federal entity or person that acquires that right; and

(2) on acceptance, cancel that right.

(e) RELATIONSHIP TO OTHER AUTHORITY.—Nothing in this subtitle affects any authority the Secretary may otherwise have to modify, suspend, or terminate a lease without compensation, or to recognize the transfer of a valid existing mining or leasing right, if otherwise authorized by law.

## Subtitle D—Land Conveyances and Exchanges

**SEC. 3301. LAND CONVEYANCE TO CITY OF COFFMAN COVE, ALASKA.**

(a) DEFINITIONS.—In this section:

(1) CITY.—The term "City" means the city of Coffman Cove, Alaska.

AUG. 24. 2009 1:59PM BLM MINERALS & LANDS NO. 4025 P. 7

# Wyoming Range Withdrawal Area






AUG. 24. 2009 1:59PM BLM MINERALS & LANDS NO. 4025 P. 8
24-Aug-2009 12:55 PM 307 775 6203 8/8

# Exhibit B




# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
801 N. Quincy Street, Suite 300
Arlington, Virginia 22203




703-235-3750 703-235-8349 (fax)

December 29, 2009

| | | |
|---|---|---|
| IBLA 2009-324 | ) | WYW-173037, *et al.* |
| | ) | |
| STANLEY ENERGY, INC. | ) | Competitive Oil and Gas Lease Sale |
| | ) | |
| | ) | Motions to Intervene Granted, Except |
| | ) | as to Wyoming State AFL-CIO; |
| | ) | Petition for Stay Denied |

## ORDER

Stanley Energy, Inc. (Stanley) has appealed from and petitioned for a stay of the effect of an August 21, 2009, decision of the State Director, Wyoming, Bureau of Land Management (BLM), rejecting its high bids for seven oil and gas lease parcels (WY-0606-114 through WYW-0606-118, WYW-0606-122, and WY-0606-123 (hereinafter, 114 through 118, 122, and 123)), included in the June 6, 2006, competitive lease sale.[1]

In this order we address motions to intervene and grant them, except as to Wyoming State AFL-CIO. We also address Stanley's petition for stay. Because Stanley has failed to show a likelihood of immediate and irreparable harm from denial of a stay of the effect of BLM's decision, it is denied.

### *Background*

All seven parcels encompass a total of 5,519.64 acres of Federal land in T. 33 N., Rs. 114 and 115 W., and T. 34 N., R. 114 W., Sixth Principal Meridian, Sublette County, Wyoming, in the Wyoming Range, within the Bridger-Teton National Forest (BTNF). Each proposed lease was to be subject to several special stipulations dictated by the Forest Service (FS), U.S. Department of Agriculture, which has surface management jurisdiction over National Forest lands, that would restrict the location, timing, and manner of oil and gas operations.

Prior to the sale, various organizations filed protests challenging the inclusion in the sale of 13 parcels in the BTNF, including the 7 at issue. BLM proceeded with

---

1 If issued, Parcels 114 through 118, 122, and 123 would be included, respectively, in competitive oil and gas leases WYW-173037 through WYW-173041, WYW-173045, and WYW-173046.



the sale, but in a January 8, 2007, decision, the Deputy State Director, Minerals and Lands, Wyoming, BLM, notified the protestants that, in light of two orders of the Board dated July 10, 2006 (*Wyoming Outdoor Council,*, IBLA 2006-184), and September 21, 2006 (*Wyoming Outdoor Council,* IBLA 2006-208), granting petitions for stay of decisions denying protests of competitive oil and gas lease sales for parcels in the Wyoming Range portion of the BTNF, he had decided to defer leasing the parcels "until the concerns raised by the IBLA are sufficiently addressed."[2] Decision, dated Jan. 8, 2007, at 9.

Thereafter, in February 2008 BLM and FS published in the *Federal Register* a notice of intent to prepare a Supplemental Environmental Impact Statement (SEIS) concerning oil and gas leasing on 44,720 acres of Federal land in the BTNF, including the lands in question. 73 Fed. Reg. 6453 (Feb. 4, 2008). The purpose of the proposed action, the agencies stated, was to determine whether and to what extent analysis of new issues and information might alter the oil and gas leasing decision for those lands. The agencies also stated that the SEIS would address "the issues identified by IBLA as inadequately or inappropriately addressed in previous NEPA analyses informing leasing decisions and other issues identified through scoping." *Id.*

On March 30, 2009, during preparation of the SEIS, Congress enacted the Omnibus Public Land Management Act of 2009 (Omnibus Act), Pub. L. No. 111-11, 123 Stat. 991, section 3202(a) of which barred, subject to valid existing rights, oil and gas leasing in the "Wyoming Range Withdrawal Area" (WRWA), which encompasses over 1.2 million acres, including the lands within the parcels at issue.[3] 123 Stat. at 1128.

In his August 2009 decision, the State Director rejected Stanley's high bids for the parcels. Therein, he referred to the Board's July and September 2006 orders, cited above, and stated that "the decision to offer your parcel[s] for lease relied upon the same NEPA documentation and is therefore affected by the defects identified in the IBLA orders." Decision at 1. He also referenced the Omnibus Act, stating that the

---

[2] Those two appeals involved challenges to BLM's inclusion of one or more parcels in the Dec. 6, 2005, and Apr. 4, 2006, competitive oil and gas lease sales. In each order, the Board found that the protestants had shown a likelihood of prevailing on the merits of their appeals regarding compliance by BLM with section 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4332(2)(C) (2006). By order dated Feb. 14, 2007, at BLM's request, the Board set aside the BLM decisions denying Wyoming Outdoor Council's protests and remanded the cases to BLM.

[3] Section 3202 of the Omnibus Act is found in Subtitle C of Title III of the Act, which is referred to as the Wyoming Range Legacy Act.

President and Congress had determined that there were higher and better uses for lands in the WRWA than oil and gas exploration and development.

However, his decision turned on the broad discretionary authority vested in the Secretary by the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181-287 (2006), "to lease or not to lease Federal land which is otherwise available for leasing."[4] Decision at 1. He stated that the Secretary, acting through BLM, may "reject a bid and decline the offer to lease for any reason, prior to lease execution."[5] *Id.* The State Director stated that BLM would refund the administrative fees, minimum bonus bids, and first year's rentals, which had already been paid.

Stanley appealed timely and petitioned for a stay of the State Director's decision.

Before turning to Stanley's petition for a stay, we address motions to intervene filed by Wyoming Outdoor Council, The Wilderness Society, Greater Yellowstone Coalition, and Wyoming AFL-CIO (collectively, WOC), National Wildlife Federation and Wyoming Wildlife Federation (collectively, NWF), The National Outdoor Leadership School and Trout Unlimited (collectively, NOLS), and the State, all of which had originally protested the offering of these parcels at the competitive sale. Stanley opposes the motion to intervene filed by WOC, but does not challenge the motions to intervene filed by NWF, NOLS, or the State.

---

[4] The parcels in question are available for leasing because sec. 3202(e) of the Omnibus Act, which concerns prior oil and gas lease sales, states at 123 Stat. 1128:

> Nothing in this section prohibits the Secretary from taking any action necessary to issue, deny, remove the suspension of, or cancel a lease, or any sold lease parcel that has not been issued, pursuant to any lease sale conducted prior to the date of enactment of this Act, including the completion of any requirements under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

[5] There is no indication that FS withdrew its consent to leasing, which would preclude BLM from leasing the parcels. *See* 30 U.S.C. § 226(h) (2006) ("The Secretary of the Interior may not issue any lease on National Forest System Lands reserved from the public domain over the objection of the Secretary of Agriculture"); 43 C.F.R. § 3101.7-1(c); *Board of Commissioners of Pitkin County*, 173 IBLA 173, 180 (2007).

*Motions to Intervene Granted, Except as to Wyoming State AFL-CIO*

We have granted motions to intervene in a pending appeal when the party seeking intervention would be adversely affected by a Board decision favorable to the appellant and could have independently brought an appeal from the BLM decision, if it had adversely affected the intervening party. *Bales Ranch, Inc.*, 151 IBLA 353, 355 (2000); *Sierra Club - Rocky Mountain Chapter*, 75 IBLA 220, 221-22 n.2 (1983); *see Las Vegas Valley Action Committee*, 156 IBLA 110, 112 (2001), and cases cited ("[It is] the practice of the Board to grant intervention to a person having an interest that would be adversely affected if the Board overturned BLM's action").

Stanley contends that WOC should not be permitted to intervene, since none of the organizations has a legally cognizable interest likely to be injured by a decision of the Board favorable to the issuance of oil and gas leases covering the seven parcels at issue. Under the Board's standing regulations, a party to a case is adversely affected by a decision, in accordance with 43 C.F.R. § 4.410(d), when that decision has caused or is substantially likely to cause injury to a legally cognizable interest. *See, e.g., The Coalition of Concerned National Park [Service] Retirees*, 165 IBLA 79, 81-82 (2005). When an organization appeals a BLM decision, it must demonstrate that one or more of its members has a legally cognizable interest in the subject matter of the appeal, coinciding with the organization's purposes, that is or may be adversely affected by the decision. *Id.* at 86-87. Such a demonstration may be made by an organization member filing with the Board a declaration that he or she has used the public lands in question, and that a BLM decision, if implemented, will impair such use. *See Missouri Coalition for the Environment*, 172 IBLA 226, 234-35 (2007).

WOC offers the September 30, 2009, Declaration of Stephanie Kessler, a member of the Wyoming Outdoor Council, The Wilderness Society, and Greater Yellowstone Coalition (Ex. 8 attached to Motion to Intervene), the September 29, 2009, Declaration of Lloyd Dorsey, a member of the Wyoming Outdoor Council and Greater Yellowstone Coalition (Ex. 9 attached to Motion to Intervene), and the September 30, 2009, Declaration of Monte Murlock, a member of the Wyoming AFL-CIO (Ex. 10 attached to Motion to Intervene) in support of the motion to intervene. All of the declarants, who are longtime residents in the vicinity of the leasing area, attest to visiting and planning to continue to visit the areas around the seven parcels and/or the seven parcels themselves, for hiking, camping, hunting, and/or other recreational purposes. They assert that, if the Board were to overturn BLM's decision and BLM issued leases, their use would be negatively impacted by oil and gas development. They particularly note the noise, air and water quality impacts, and impacts to cutthroat trout, elk, mule deer, and other fish and wildlife that would occur, which, they claim, would be detrimental to their use and enjoyment of the area.

Stanley argues that despite the representations made in the declarations, none of the organizations has shown a legally cognizable interest likely to injured by a Board decision favorable to appellant because such a decision would merely reinstate the high bids and not necessarily lead to issuance of leases.[6] It claims that lease issuance must await preparation of the SEIS and a final decision by BLM and FS whether to lease the parcels.

However, if the Board were to rule that BLM did not have the authority to reject Stanley's high bids, as Stanley urges, BLM could accept the high bids and issue leases to Stanley. Such action, necessarily, would involve denial of protests of the sale of the parcels. In situations where organizations, such as Wyoming Outdoor Council, have protested the inclusion of parcels in competitive oil and gas lease sales and had those protests denied, we have held that such an organization, when offering declarations like those provided in this case, has standing to appeal the denial of its protest, which may have come before or after acceptance of the high bids. *See, e.g.*, *Wyoming Outdoor Council*, 156 IBLA 378, 379 (2002).

Wyoming Outdoor Council, The Wilderness Society, and Greater Yellowstone Coalition have provided the necessary information to support the motion to intervene, and we grant that motion as to those three organizations.[7] They would be adversely affected by a Board decision reversing the BLM decision, and if BLM had accepted the high bids and rejected their protests, they could have independently pursued appeals to the Board and, being parties to the case and adversely affected, would have satisfied the standing requirements of 43 C.F.R. § 4.410.

However, we deny the motion as to Wyoming State AFL-CIO, which is the State labor federation representing 55 unions throughout Wyoming. WOC Motion to Intervene at 5. "The mission of the Wyoming State AFL-CIO is to improve the lives of working families—to bring economic justice to the workplace and social justice to our state and the nation." *Id. at 5-6*. The Murlock declaration establishes that a member of the Wyoming State AFL-CIO uses the parcels in question for hunting and other recreation.

We agree with Stanley that the subject matter of this appeal "is not germane to any of Wyoming State AFL-CIO's organizational purposes." Opposition at 5. Moreover, while Murlock has shown a legally cognizable interest in the subject

---

[6] Although this argument would appear to encompass all the organizations seeking to intervene, as well as the State, Stanley opposes only the motion filed by WOC.

[7] For good cause shown, and absent any objection by Stanley, we also grant the motions to intervene by NOLS, NWF, and the State.

matter of the appeal, that interest does not coincide with Wyoming State AFL-CIO's organizational purposes.

We next turn to Stanley's petition for a stay. BLM, WOC, NOLS, NWF, and the State oppose any stay.

*Petition for a Stay*

Under 43 C.F.R. § 4.21(b)(1), a petition for a stay must show sufficient justification based on the relative harm to the parties if the stay is granted or denied; the likelihood of the appellant's success on the merits; the likelihood of immediate and irreparable harm if the stay is not granted; and whether the public interest favors the granting of the stay. The party requesting the stay has the burden of showing that a stay is warranted by satisfying each of the criteria specified in the rule. 43 C.F.R. § 4.21(b)(2); *Oregon Natural Resources Council Action*, 148 IBLA 186, 188 (1999). Failure to satisfy any one of the criteria justifies denial of the petition.

*Stanley Has Failed to Show a Likelihood of Immediate and Irreparable Harm*

In support of its claim of immediate and irreparable harm, Stanley offers one argument: "There is a considerable concern that if Stanley's binding high bids for the subject parcels are allowed to be rescinded--even temporarily--through the application of the BLM State Director's Decision, BLM might apply § 3202(b) of the [Omnibus] Act to prohibit Stanley from ever developing these leases, even if Stanley ultimately prevails on the merits of this appeal."[8] Petition for Stay/Statement of Reasons at 32.

Stanley appears to be concerned that, absent a stay, BLM might impose the section 3202(a) withdrawal on the parcels, pursuant to section 3202(b), even if it were to ultimately prevail on the merits of its appeal.

There is no basis for concluding that such an interpretation of those provisions of the Omnibus Act is a reasonable one. Section 3202(b) of the Act applies to valid existing rights. Stanley is merely the high bidder for the parcels in question. The high bids do not constitute valid existing rights. Stanley has not shown a likelihood of immediate and irreparable harm.

---

[8] Section 3202(b) of the Omnibus Act provides, in relevant part, that if a valid existing right, including an existing oil and gas lease, in effect on the Mar. 30, 2009, date of enactment of the Act, is thereafter relinquished or otherwise acquired by the United States, "the land subject to that right shall be withdrawn in accordance with this section." 123 Stat. at 1128.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1, the motions to intervene filed by NOLS, NWF, and the State are granted. The motion filed by WOC is granted as to Wyoming Outdoor Council, The Wilderness Society, and Greater Yellowstone Coalition, and denied as to Wyoming AFL-CIO. Stanley's petition for a stay is denied.

Bruce R. Harris
Deputy Chief Administrative Judge

APPEARANCES:

Andrew C. Emrich, Esq.
Jere C. (Trey) Overdyke, III, Esq.
Holland & Hart LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
**FAX: 307-778-8175**
and
Davis O. O'Connor, Esq.
Holland & Hart LLP
555 17th Street, Suite 3200
P.O. Box 8749
Denver, CO 80201-8749
**FAX: 303-295-8204**

Philip C. Lowe, Esq.
Office of the Regional Solicitor
U.S. Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215
**FAX: 303-231-5363**

James C. Kaste, Esq.
Levi Martin, Esq.
Office of the Attorney General
State of Wyoming
Water and Natural Resources Division
123 Capitol Building
Cheyenne, WY 82002
**FAX: 307-777-3542**

IBLA 2009-324

Lisa D. McGee, Esq. **FAX: 307-332-6899**
262 Lincoln Street
Lander, WY 82520
For Wyoming Outdoor Council, The Wilderness Society,
Greater Yellowstone Coalition & Wyoming AFL-CIO

Michael A. Saul, Esq. **FAX: 303-786-8911**
Rocky Mountain Natural Resource Center
National Wildlife Federation
2260 Baseline Road, Suite 100
Boulder, CO 80302-7737
For National Wildlife Federation & Wyoming Wildlife Federation

Gary Cukjati **FAX: 307-332-8811**
Rocky Mountain Branch Director
The National Outdoor Leadership School
284 Lincoln Street
Lander, WY 82520-2848

Dave Glenn **FAX: 307-332-9299**
Backcountry Lands Director
Trout Unlimited
250 N. 1st Street
Lander, WY 82520